# Rutland County.

## RHODES

*vs.*

## RISLEY.

Rhodes
vs.
Risley.

Action on the case for that on the 24th day of May,
1774, one J. Parker made his note to Risley, for the
sum of £53 12s. 2d., payable in beef, pork, etc. That
afterwards, to wit, on the same 24th day of May, 1774,
the said Risley did, by his endorsement on the said
note, order the said J. P., for value received, to pay
to the plaintiff the said sum of £53 12s. 2d., etc., in
due form.

*Action by an endorsee agst. the endorser of a note.*

The note, with the endorsement, was produced and
read. Proved that Parker died insolvent about the
year 1778.

The defendant's counsel stated, and offered to prove
that in the year 1781, the defendant employed one
Pomroy to bring an action on the note, against one
Grant, as executor, in his own wrong, on the estate of
Parker; Grant having married Parker's widow, and
taken the estate without administering; and that Risley's
name was then put on the note for the purpose of filling
a power of attorney. That a suit was commenced
against Grant, who afterwards settled, paid Risley a
certain sum, about £20, and took up the note. That
Grant put off the note to J. G., and J. G. to the plain-
tiff, who filled up the endorsement to himself, and
brought this action. And states that the defendant
had never heard of the note since the year 1781, when
Grant took it up.

*Defendant's counsel offered to prove the purpose of the endorsement, which was in blank, and that the note was paid and taken up by one Grant executor or administrator of Parker, the original maker, and that Grant had sold it to J G, who had sold it to the plaintiff, and the plaintiff had filled the endorsement to himself.*

It was objected that if a note be endorsed blank, the endorser shall never be allowed to prove it was intended for some other purpose, and not to make him liable; especially when it comes into the hands of a third person. Agreeably to this have been the determinations in Connecticut—Kirby's Rep., 393, Hungerford vs. Thompson.

Rhodes vs. Risley.

Plaintiff's Counsel in objection.

*By the Court.*—Kirby's reports are not to be cited as an authority here, nor are the determinations of Courts in other States; but you may cite their reasons.

Kirby's Reports no authority in this state, but reasons may be cited.

After a full hearing on the objection, the Court were of opinion, *dissentiente* Paine, to admit the evidence. The following argument is inserted from memory—no minutes were taken at the time; but it is the substance of what was said on the question.

Proof admitted.

*Chief Justice*—I have never been satisfied with those decisions which introduce an arbitrary custom, to bind a man contrary to his express agreement, and the real equity of the case. If, however, such customs have generally prevailed in a State, have been authorized by judicial decisions, and property be involved in its continuance; it ought not rashly to be shaken. In this State, I apprehend, such custom as is here contended for, has not generally prevailed. There have been no leading decisions in the Courts of law on the point. The matter, therefore, lies open to investigation.

Argument of the Chief Justice on the question.

No custom has prevailed in this State which can effect the question.

It is said, if a man sign his name blank on a note, which he transfers, the endorsee may fill it up with a power, or a general endorsement, for value received; and from the nature of the transaction, the endorser shall be bound, and that he shall never controvert the right, notwithstanding any agreement made at the time of the transfer. We lay aside custom, and go on the

Rhodes
vs.
Risley.
footing of common justice between the parties. A.
sells a note to B., and to enable B. to recover of the
maker, endorses his name blank on the note. At the
How far an
endorser is re-
sponsible. same time it is fairly agreed, that B. shall risk the
ability of the maker of the note, and shall, on his
Endorsee can
not demand
contrary to his
agreement, a t
the time of en-
dursement. failure, have no demand on A. In this case A. is, in
common justice and honesty, under no obligation to B.
on failure of the maker. Nay, B. cannot, with a good
conscience, demand anything of A. The endorsement,
though filled up by the endorsee, may be *prima facie*
evidence of an obligation on the endorser; but it is
only *prima facie* evidence, and, in justice, should be
Endorsement
prima facie evi-
dence, but may
be controverted allowed to be controverted. What ought to be de-
cisive in this case, is, that if the endorsee make use of
the endorsement contrary to agreement, to the damage
If the endor-
see make use of
the endorse-
ment contrary
to his agree-
ment, he is an-
swerable in
damages. of the endorser, he is answerable in damages. This
has been clearly decided in Great Britain, where the
negotiation of notes is carried to its greatest length.
This was the great point decided in the case of Moses
Moses v. Mac-
pherlan. 2 Burr
10.16. & 1 Black.
219 S. C. vs. Macpherlan. Moses endorsed four notes to Mac-
pherlan, under a special agreement, that Macpherlan
should indemnify him against all the consequences of
such endorsement. (*Note*—This agreement was in a
seperate memorandum.) Macpherlan brought his
actions, on the several endorsements against Moses, at
an inferior Court. The Court refused to hear evidence
of the agreement, and gave judgment against Moses,
who, thereupon, brought his action against Macpher-
lan, to recover back the money so unjustly recovered.
And it was solemnly determined, that an action well
Inconsistency
of that deter-
mination. lay. This is to say, the endorser in such case is holden,
and he is not holden. The evidence, which could not
be admitted, to save him from an unjust payment, could
be admitted, and thought amply sufficient, in another
action, to recover back the identical money.

However, it was observed by Lord Mansfield, in that

action, that the inferior Court, did right in not going into the collateral agreement, otherwise they might have gone into matters which exceeded their jurisdiction. This reason seems to imply that a superior Court might, and would have gone into the whole matter.

Rhodes
v.
Risley.

Let us now consider the nature of the transaction, as it stands, between the original endorser and the subsequent endorsees. And, in considering this point, I shall not feel myself bound by foreign precedents, but by the principles of the common law, which are the principles of common justice, as they apply to the general circumstances and situation of this Commonwealth. In Great Britain, they consider the endorsee as giving credit, as much to every prior, as to his immediate endorser. This, it is said, is established by the course of trade, and is for the benefit of commerce. This is, at least, problematical. But as this State is not, and from local situation, cannot be greatly commercial, this may be laid out of the question. The case then will stand thus : A. sells a note to B., at the risk of the purchaser, and endorses it blank. In this case it is unconscionable in B., on failure of the maker of the note, to demand the money of A. But B. has sold the same note, still endorsed blank to C. The question is, whether B. can give a greater right than he had himself. A's. name is on the note—this may prove that B., the possesser, has a right to use, or sell, and nothing more, independent of the custom. C. contracts with B., to B. he ought to look for the right, which he purchases, whether it be a right against the maker only, or whether A. is to warrant, in case the maker shall fail. If B. deceive C., he alone shall be answerable. The fraud of B. ought not to injure A. Let each trust where he contracts. *Caveat emptor*—

Principles of the common law, what?

C. takes a note of B., endorsed blank by A. He must trust to B. for the right he may have agst. A., on failure of the maker.

" Beware, purchaser !" may, with great justice, be applied in this case. The same hard, technical reasoning has prevailed, in some laws, against the makers of a negotiable note in the hands of an endorsee, where a payment, not minuted on the note, has been made before the transfer. But, in some of the neighboring States, the same principles of common justice, which I now go upon, have prevailed, in this point. The Courts have made it a rule to allow all payments *bona fide* made before the transfer, or rather, before notice ; and the endorsee must look to the endorser for so much. This differs only in name , the reasons go the whole length of the present case. The evidence ought to be admitted.

As to the other point. of a long time having elapsed without notice given to the endorser, it is on the part of the plaintiff to prove due diligence, and reasonable notice of failure. It is not in the present question.

> The evidence was admitted, and the Jury found a verdict for the defendant.